UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

TEGRANT ALLOYD BRANDS, INC.,  )
                              )
          Plaintiff,          )
                              )
     v.                       )     No. 08 C 50041
                              )
                              )
THE MERCHANT OF TENNIS, INC., )
                              )
          Defendant.          )

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

Plaintiff, Tegrant Alloyd Brands, Inc., has filed a three-count, second amended complaint against defendant, The Merchant of Tennis, Inc. d/b/a U.S. Merchants, seeking payment for products sold by plaintiff and received by defendant. In response, defendant asserts as both an affirmative defense and a counterclaim that the parts supplied by plaintiff were defective and non-conforming. Plaintiff moves for summary judgment as to Count I, a breach of contract claim. For the following reasons, plaintiff's motion for summary judgment is denied.

I. BACKGROUND[1]

Plaintiff, a Delaware corporation with its principal place of business in DeKalb, Illinois is in the business of manufacturing custom plastic thermoformed packaging commonly used in the

---

[1]The following facts are taken from the parties' Local Rule 56.1 statements of material facts, as well as the exhibits attached thereto, and are either undisputed or have been viewed in "the light most favorable to the non-moving party." McCann v. Iroquois Mem'l Hosp., 622 F.3d 745, 752 (7th Cir. 2010) ("In determining if there was an issue of material fact . . . the court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor."); see also Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010).

retail sale of consumer goods. Defendant, a California corporation with its principal place of business in Los Angeles, provides "just in time" packaging and distribution services to suppliers of products to wholesale clubs and other mass merchants. "Just in time" means that the products are packaged to retailer specifications and arrive at locations designated by the retailer within a short time frame.

In 2005, plaintiff contacted defendant seeking to become a supplier of plastic parts for defendant's contract packaging business. After plaintiff delivered several small projects, defendant asked plaintiff to produce custom plastic parts used in a packaging system for cordless telephones. The thermoformed plastic parts were designed to snap together as part of the packaging. The parties agreed the parts would be made of 24-gauge plastic. Plaintiff created samples at its DeKalb, Illinois plant and sent some samples to defendant for approval. Defendant approved the samples believing that the parts produced would conform to the samples. Plaintiff promised defendant that the parts would be fit for the purpose intended. Plaintiff ultimately produced the parts at its plant in Tijuana, Mexico in larger quantity production runs and using different equipment than was used to make the samples.

Defendant ordered the parts by issuing purchase orders. At defendant's request, the parts were shipped to defendant's facility in Seattle, Washington. When defendant received the parts, it believed the parts were substandard, and non-conforming, and returned some of them. In September 2006, Jeff Green, President and CEO of defendant, sent an e-mail to Jim Price, plaintiff's Vice

President, asking him to please look at some pictures of packaged products and "explain how this could get past your quality control."[2]

Thereafter, between March 23, 2007 and August 17, 2007, plaintiff issued 133 invoices for parts that were delivered to defendant. Although defendant returned some of the parts, it used most of the parts in its packaging of merchandise sold to customers. In April 2007, Justice Butler, purchasing manager for defendant, sent Price an e-mail stating that defendant expected plaintiff to use a 24-gauge plastic, but 18-gauge was being used. Butler further indicated that defendant would like credit applied to its account for the issue. Numerous other e-mails, telephone calls, and meetings ensued in which defendant notified plaintiff that the parts were non-conforming. Also during this time, defendant sent plaintiff a document entitled "Debit Note #454" which is dated July 20, 2007. The Note stated that defendant would be taking a deduction of 40% against the prices on plaintiff's invoices. On July 30, 2007, defendant sent plaintiff a check numbered 12488 in the amount of $148,790.79 to pay for 124 of the outstanding invoices. The accompanying check stub referenced each invoice for the non-conforming parts and Debit Note #454. Defendant asserts the check was payment in full for those invoices. Plaintiff did not object to the debit note or to the check before cashing the check on August 1, 2007.[3]

---

[2]Plaintiff disputes that defendant advised plaintiff of defects in telephone parts as early as September 2006. The court quotes the language of the e-mail at issue, the authenticity of which plaintiff does not challenge.

[3]Defendant asserts that plaintiff's collection efforts immediately after this payment were limited to other invoices. However, the evidence referred to by defendant does not support the contention that efforts were limited to these later invoices. It shows only that there were collection efforts concerning the later invoices. Plaintiff has presented evidence that it challenged the deduction, stating in a January 9, 2008 e-mail that the unilateral adjustment "can not [sic] be justified by any supporting facts."

Defendant continued to notify plaintiff of the defects through August 2007. On August 15, 2007, plaintiff and defendant had a meeting at plaintiff's Tijuana plant. At the meeting, plaintiff did not explain why the quality problems occurred or how it would assure such problems would not recur. Plaintiff's last delivery to defendant was invoiced on August 17, 2007. Defendant's customers paid defendant for the packaging which contained the parts delivered by plaintiff. Defendant has refused to pay plaintiff any more for the parts it received.

In Count I of its second amended complaint, plaintiff alleges that defendant has breached its contract with plaintiff by failing to pay for products that plaintiff produced and delivered to defendant. Plaintiff asserts that defendant owes plaintiff $1,659,107.85. Plaintiff now moves for summary judgment as to Count I.

## II. ANALYSIS

Plaintiff argues it is entitled to summary judgment on its breach of contract claim seeking payment for the goods defendant received and sold to its customers. Under Illinois law, "a buyer must pay for the goods it accepts," ECHO, Inc. v. Whitson Co., Inc., 52 F.3d 702, 705 (7th Cir. 1995) (citing 810 ILCS 5/2-206(1)), and it is inconsistent for a buyer to reject goods, but retain possession of the property and use it for its own profit, Atlas Copco Constr. Mining Technique USA, LLC v. Indie Energy Servs. Co., LLC, No. 08 C 2363, 2009 WL 4668743, at *3 (N.D. Ill. Dec. 2, 2009). However, defendant does not claim it rejected the goods. Rather, it contends that summary judgment must be denied because (1) there has been accord and satisfaction, and (2) it is entitled to a set-off pursuant to § 2-717 of the Uniform Commercial Code (UCC).

Summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). The moving party must identify the specific portions of the total record which it believes establish the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining if there [is] an issue of material fact . . . the court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor." McCann v. Iroquois Mem'l Hosp., 622 F.3d 745, 752 (7th Cir. 2010).

### A. Accord and Satisfaction

Defendant first claims that plaintiff cannot be awarded summary judgment because there was accord and satisfaction of defendant's debt. Specifically, defendant argues that accord and satisfaction was achieved when it tendered check number 12488 to plaintiff, and attached the check stub referencing each invoice for nonconforming parts and Debit Note #454. Plaintiff argues that this check was not accord and satisfaction because neither the check nor the stub conspicuously stated the check was tendered as full satisfaction of the disputed claim. The court agrees with plaintiff.

"An accord and satisfaction is a contractual method of discharging a debt or claim." Saichek v. Lupa, 204 Ill. 2d 127, 135 (2003).[4] "To constitute an accord and satisfaction there must be:

---

[4] Both parties apply Illinois law to their accord and satisfaction arguments. Although defendant raises a choice of law issue in regard to its second argument, it does not contend any other state's laws apply to this issue. As such, the court applies Illinois law. See ECHO, 52 F.3d at 707 ("Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.").

(1) a <u>bona</u> <u>fide</u> dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." <u>Id.</u>  In addition, a claim is discharged only "if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." 810 ILCS 5/3-311(b).  The statement is conspicuous if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."  810 ILCS 5/1-201(b)(10).  For example, a statement is conspicuous if it is written in capital letters in a size greater than the surrounding text or in contrasting type, font, or color to the surrounding text, or is set off from the surrounding text by symbols or other marks.  <u>Id</u>

In this case, the check and invoice tendered by defendant do not contain any statement that check number 12488 was being tendered in full satisfaction of a claim.  Although the invoice numbers are listed and Debit Note #454 is referenced in the invoice list, there is no language indicating that defendant intended the check to be offered in connection with an accord and satisfaction agreement.  <u>See</u> <u>M.L.G. Trust v. Gov't of Republic of Indonesia</u>, No. 89 C 6649, 1992 WL 373154, at *3 (N.D. Ill. Dec. 10, 1992) (holding that a vague reference to full payment alone does not establish an accord and satisfaction).  Also, although Debit Note #454 informed plaintiff that defendant intended to take a 40% reduction in what it owed, Debit Note #454 makes no reference to the full settlement of the parties' dispute.  Moreover, even if the Debit Note could serve as a conspicuous statement to that effect, the reference to the debit note on the check stub is hardly conspicuous.  It is listed on the last and seventh page of the stub as "DN#454" in the same font as all the other invoice entries.  <u>Compare</u> <u>McMahon Food Corp. v. Burger Dairy Co.</u>, 103 F.3d 1307,

1315-16 (7th Cir. 1996) (holding that the defendant's check did not reflect accord and satisfaction, in part, because "the restrictive language, although typed in capital letters, was simply the last of several lines of information inscribed on the voucher accompanying the check").

Therefore, because defendant failed to provide evidence from which a reasonable jury could conclude check number 12488 or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim, its accord and satisfaction defense fails and does not prohibit summary judgment on Count I.

## B. Effect of Set-Off

Defendant next contends that its claim of a set-off pursuant to § 2-717 precludes summary judgment. Section 2-717 states that, "The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." 810 ILCS 5/2-717. Defendant argues that because the issues of breach and set-off are inextricably intertwined by §2-717, there is a genuine issue of material fact as to breach and damages, and summary judgment cannot be granted.

### 1. Controlling Law

As an initial matter, defendant raises the issue of which state's law governs its right to a set-off. Defendant comments in its brief that both California and Washington have a more significant relationship with this case because the contracts at issue were made in California and the goods were delivered to Washington. However, defendant then continues to discuss Illinois law and does not engage in a choice of law analysis. Plaintiff contends that Illinois law applies because plaintiff's principal place of business is Illinois and Illinois is the place of contracting.

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2001). This includes choice of law principles. Tanner v. Jupiter Realty Corp., 433 F.3d 913, 915 (7th Cir. 2006). However, "[b]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." Jean v. Dugan, 20 F.3d 255, 260 (7th Cir. 1994) (quotation marks omitted). Like Illinois, both California and Washington have adopted § 2-717 of the UCC, the provision at issue. Cal. Com. Code § 2717; Wash. Rev. Code § 62A.2-717.

Defendant has not directed the court to any California or Washington cases that reach a different conclusion than Illinois courts as to the effect of §2-717 in this case.[5] As such, the court will apply Illinois law. See Allstate Ins. Co. v. Kundrat, No. 2:03 CV 481 RL, 2006 WL 516780, at *10 (N.D. Ind. Mar. 2, 2006) ("It is not this Court's obligation to do the research for the parties or support bald assertions for them."); see also United States v. Smith, 26 F.3d 739, 743 (7th Cir. 1994) (stating courts need not research and construct legal arguments for parties); Pelfresne v. Vill. of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").

2. Section 2-717

Plaintiff and defendant disagree as to whether §2-717 has a substantive effect on plaintiff's breach of contract claim such that an issue of fact as to a set-off taken pursuant to § 2-717 prevents

---

[5]The court, after its own investigation of the law of these states, cannot find any case in contradiction to Illinois law.

summary judgment on such a claim.[6]  Illinois courts have had little to say on this issue.  Although it is clear that § 2-717 does not apply to a claim for damages under a separate contract and thus, does not preclude summary judgment on a claim seeking the balance due under a contract of sale where a claim under a separate contract is asserted, see Berdex Int'l., Inc. v. Milfico Prepared Foods, Inc., 258 Ill. App. 3d 738, 741 (1994); Rebaque v. Forsythe Racing Inc., 134 Ill. App. 3d 778, 782 (1985),  no Illinois court has addressed the substantive effect of § 2-717 on a seller's breach of contract claim.  In light of this lack of authority, as a district court sitting in diversity, this court must attempt to predict how the Supreme Court of Illinois would decide this issue.  Research Sys. Corp. v. IPSOS Publicite, 276 F.3d 914, 925 (7th Cir. 2002).

Defendant directs the court to Sencon Systems, Inc. v. W.R. Bonsal Co., No. 85 C 8250, 1986 WL 10989 (N.D. Ill. Sept. 29, 1986).  In that case, the court denied the seller's motion for summary judgment on its claim for unpaid invoices where the buyer invoked its rights under § 2-717.  Id. at *3.  The Sencon court interpreted § 2-717 to authorize the buyer, after notification, to set off its damages from the unpaid invoices.  Id. at *1.  As such, the court concluded if there was an issue of fact as to whether the buyer was authorized to set-off amounts of the unpaid invoices, summary judgment on the seller's breach of contract claim was precluded.  Id. at *3.  This interpretation is consistent with defendant's argument.

This conclusion is also supported by the vast majority of other authorities considering this issue. In both Purofied Down Products Corp. v. Royal Down Products, Inc., 87 F.R.D. 685 (D.C.

---

[6]The court notes that each purchase order at issue is a separate contract between the parties. Defendant contends that all of the products purchased through the invoices at issue contained non-conforming parts, and thus, although the court refers to one contract, there is an issue of breach and set-off as to each purchase order between the parties.  The court refers to all the purchases orders as one contract only for ease within this order.

Mich. 1980), and Created Gemstones, Inc. v. Union Carbide Corp., 47 N.Y.2d 250 (1979), the courts explained that if a buyer has properly invoked its rights under § 2-717, its failure to pay the amount of its actual damages for non-conformance is not a breach of contract. Purofied, 87 F.R.D. at 690 (explaining that "if defendant properly employed set-off available under [§ 2-717], then defendant cannot be said to have breached the contract, and plaintiff cannot recover the purchase price allegedly due"); Created, 47 N.Y.2d at 255 (holding that once a buyer invokes § 2-717, its further liability for goods sold and delivered is "extinguished"); see also Baccus Indus., Inc. v. Frontier Mech. Contractors, 36 S.W.3d 579, 585-86 (Tex. App. 2000). Although the seller's breach does not excuse the contractual obligations of the buyer, the buyer is permitted to withhold from the purchase price its actual damages and breaches its obligations only to the extent the amount withheld exceeds its damages. Baccus, 36 S.W.3d at 585-86. As such, these cases reason that where an issue of fact remains as to a buyer's set-off claim under § 2-717. summary judgment cannot be granted on the seller's claim for breach of contract because "[i]f, after trial, it is determined that [the seller] did in fact breach, then [the buyer's] liability on the [breach of contract claims] would be extinguished to the extent that it was damaged by the breach." Created, 47 N.Y.2d at 255-56 (footnote omtted).

In line with these cases, a leading treatise on the UCC, Anderson on the Uniform Commercial Code, as well as several other state courts, have held that where there is a set-off claim there remains an issue of fact as to a breach of contract action. 4A Anderson U.C.C. § 2-717:9 (3d. ed.). Anderson states that "[w]hen a fact issue arises as to whether the seller has performed the contract, the seller cannot recover, as a matter of law, because the buyer would be entitled to set off its damages against the contract price if in fact the seller was guilty of a breach." 4A Anderson U.C.C. § 2-717:9 (3d. ed.). Moreover, courts in Vermont, New York, South Carolina, and Oregon

that have considered the issue have determined that a § 2-717 set-off precludes summary judgment on a breach of contract claim when there is an issue of fact as to whether the buyer is entitled to a set-off. See Kingston Pipe Indus., Inc. v. Champlain Sprinkler, Inc., 177 Vt. 484, 486 (2004) (holding that "because [the buyer] raised a genuine issue of material fact pursuant to a valid claim under § 2-717, summary judgment awarding [the seller] damages equal to the full purchase price of the pipe was improper"); Panda Capital Corp. v. Kopo Int'l, Inc., 662 N.Y.S.2d 584, 586 (N.Y. App. Div. 1997) (holding that summary judgment may not be granted on a seller's counterclaim for goods sold and delivered where there are unresolved factual issues in the buyer's action for damages concerning whether the seller breached the underlying contract of sale); United States v. S. Contracting of Charleston, Inc., 862 F. Supp. 107, 110 (D.S.C. 1994) (same applying South Carolina law); Pac. W. Resin Con. v. Condux Pipe Sys., Inc., 771 F. Supp. 313, 318 (D. Or. 1991) (same applying Oregon law).

Plaintiff relies on two cases from this district, Inspec Foams, Inc. v. Claremont Sales Corp., No. 01 C 8539, 2002 WL 1765630, at *3 (N.D. Ill. July 30, 2002), and Quaker Alloy Casting Co. v. Gulfco Industries, Inc., 686 F. Supp. 1319, 1344 (N.D. Ill. 1988), to support its argument that summary judgment is appropriate even where a buyer raises its right to set-off under § 2-717. In contrast to Sencon, these district courts held that summary judgment could be granted to a seller on a contract for sale, even where the buyer claimed a set-off pursuant to § 2-717. Inspec, 2002 WL 1765630, at *3; Quaker Alloy, 686 F. Supp. at 1344.

The facts of both these cases are distinguishable from the facts of this case. In Inspec, there was no dispute that the buyer withheld far more of its payment due to the seller than its potential set-off claim. Inspec, 2002 WL 1765630, at *3. Thus, in finding the buyer breached the contract, the

Inspec decision is not inapposite to the case law cited above, which holds a buyer breaches the contract for sale by withholding an amount that exceeds the damages. See Baccus, 36 S.W.3d at 585-86. In contrast, in this case, there is a material issue of fact as to defendant's damages and whether defendant had a right to withhold and withheld the correct amount. Accordingly, it is impossible to determine whether defendant breached the contract for sale by withholding too much of the contract price.

In some respects, Quaker Alloy is also distinguishable. In that case, the court noted that the buyer had failed to provide the seller with timely notice as required by § 2-717, which is not the case here. Quaker Alloy, 686 F. Supp. at 1344. The Quaker Alloy court also specifically disagreed with the reasoning in Purofied that "Acceptance of seller's product, and refusal to pay, alone do not necessarily constitute breach." Id. at 1344. The court turned to the language of § 2-717, and particularly focused on the phrase "still due" where § 2-717 speaks of a buyer's right to deduct damages resulting from any breach of the contract by the seller from any part of the price still due. The court held that because the entire amount of the parties' contract is "still due" to the seller when the seller is granted summary judgment on the breach of contract claim, the buyer maintains its rights under § 2-717 to set-off this amount through a counterclaim, and summary judgment on the seller's claim is not precluded.

Although it is true that even after a seller obtains summary judgment on its claim an amount is "still due," this court respectfully disagrees with this analysis in Quaker Alloy. In that case, the court failed to focus on the elements of the seller's cause of action. Summary judgment in favor of a seller on its breach of contract claim requires that there is no genuine issue of material fact that the buyer breached the contract of sale. Anderson, 477 U.S. at 248. Because § 2-717 authorizes a

buyer to deduct damages resulting from the seller's breach, the buyer does not breach the parties' contract when it properly deducts these damages. See Baccus, 36 S.W.3d at 585-86; Purofied, 87 F.R.D. at 690; Created, 47 N.Y.2d at 255. As such, where an issue of fact remains as to the buyer's proper use of a set-off, an issue of fact as to breach remains, and thus, summary judgment cannot be granted.

Finally, plaintiff relies on a statement by the Seventh Circuit in Schieffelin & Co. v. Valley Liquors, Inc., 823 F.2d 1064, 1067 (7th Cir.1987).[7] In Schieffelin, the seller sued the buyer for goods delivered. 823 F.2d at 1064. Citing the seller's breach of the parties' distributorship agreement, the buyer refused to pay. Id. The court concluded that under Illinois law, a seller is entitled to the price of goods accepted, regardless of the buyer's claim under a different contract. Id. at 1067. The court reasoned that the sale of goods resulted from the purchase orders, not from the distributorship agreement and thus, concluded they were separate agreements. Id. The court then made the following statement:

> We note further that Illinois, as a matter of procedure, requires a defendant's claim in the nature of set-off or recoupment to be pleaded as a counterclaim, ch. 110 §

---

[7]Plaintiff also cites Midwest Generation, LLC v. Carbon Processing & Reclamation, LLC, 445 F. Supp. 2d 928 (N.D. Ill. 2006), Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc., 218 F. Supp. 2d 974 (N.D. Ill. 2002), Borden, Inc. v. Tri-Star Indus., Inc., No. 93 C 7561, 1995 WL 398879 (N.D. Ill. July 3, 1995), Sherwin-Willaims Co. v. Mark Charcoal Co., Inc., No. 80 C 4541, 1985 WL 3932 (N.D. Ill. Nov. 15, 1985), and Lorenzo Banfi di Banfi Renzo & Co. v. Davis Congress Shops, Inc., 568 F. Supp. 432 (N.D. Ill. 1983), for support of their argument that summary judgment can be granted to a seller despite buyer's counterclaim arising under the same contract. However, none of these cases discussed the effect of § 2-717. In all of them, the buyers never raised § 2-717 defenses. See Midwest,445 F. Supp. 2d at 931-32; Fabrica, 218 F. Supp. 2d at 977; Borden, 1995 WL 398879, at *3; Sherwin-Williams, 1985 WL 3932, at *3; Banfi, 568 F. Supp. at 433-34. Moreover, in Fabrica, the buyer did not present evidence at summary judgment showing that it notified the seller of the non-conformity in a timely fashion. 218 F. Supp. 2d at 977. As such, these cases are not on point.

> 2-608(a), and provides for separate adjudication of one claim under a rule almost identical to Federal Rule 54(b), ch. 110A, Supreme Court Rule 304.

Id. Plaintiff interprets this statement to mean that because set-off claims pursuant to § 2-717 are technically counterclaims, they cannot prevent summary judgment on a seller's claim for breach.

However, although there is no question that under Illinois law, "the procedural concept of setoff is subsumed under the term 'counterclaim' even where no affirmative relief is sought," Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc., 275 Ill. App. 3d 452, 461-62 (1995), the Schieffelin court did not address how a claim and a counterclaim arising under the same contract are effected by § 2-717. Specifically, the Schieffelin court did not need to address whether a buyer's proper assertion of its rights under § 2-717 excuses his obligation to pay the seller the amount originally due, and thereby, effects a seller's claim for breach. Moreover, the issue in this case is the interpretation and effect of § 2-717 and not state procedural law. If procedural law was at issue here, federal, not state law, would govern. See Gacek v. Am. Airlines, Inc., 614 F.3d 298, 301 (7th Cir. 2010) ("Under the Erie doctrine, federal courts in diversity cases . . . apply state 'substantive' law but federal 'procedural' law.").

More importantly, the analysis in other cases from both the Seventh Circuit and Illinois suggests that a set-off counterclaim pursuant to § 2-717 precludes summary judgment on a seller's claim for breach of the same contract. For example, in ECHO, the Seventh Circuit confronted the issue of whether summary judgment could be granted in the face of a set-off claim. 52 F.3d at 704. The court's decision hinged on whether the claims arose under separate contracts, or whether § 2-717 applied. Id. at 705. Ultimately, the court found that because the claims arose under separate contracts § 2-717 did not apply and summary judgment could be granted in favor of the seller. Id. at 708. Although the court did not directly address whether an issue of fact as to a set-off under

§ 2-717 prohibited summary judgment on a contract claim, there would be no need for the court's analysis of whether there were two separate contracts and whether § 2-717 permitted a set-off if the seller was entitled to summary judgment whether or not § 2-717 applied.

Similarly, in Rebaque, the Illinois Appellate Court distinguished a set-off counterclaim arising under the same contract pursuant to § 2-717 from one arising under a different contract. Rebaque, 134 Ill. App. 3d at 783. In that case, the trial court granted a seller of an automobile summary judgment on his breach of contract claim, despite the buyer's counterclaim, which asserted a claim under a separate contract. Id. at 779. The buyer's counterclaim remained pending. Id. at 780. In reviewing the trial court's grant of summary judgment on the seller's claim, the Illinois Appellate Court explained that a counterclaim arising out of a separate contract must be decided separately as was done in that case. Id. at 783.

In light of the authority discussed above and the implication by the Seventh Circuit and the Illinois Appellate Court that the application of §2-717 is significant to whether summary judgment is appropriate on a seller's claim for breach of a contract for sale, this court predicts that in this case the Supreme Court of Illinois would hold that a denial of summary judgment to plaintiff is proper in this case. See Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 635 (7th Cir. 2007) (holding that in predicting how a state Supreme Court may rule, the decisions of intermediate appellate courts of the state are given great weight). Defendant has presented evidence that shows that defendant informed plaintiff of the alleged non-conformity in a timely fashion and plaintiff does not contend otherwise. Defendant also has presented evidence that it notified plaintiff that it intended to deduct the amount of damages from the purchase price and paid some of the amount due to defendant. Thus, § 2-717 is applicable.

As discussed above where a buyer raises § 2-717 and issues of fact remain as to whether the product produced by defendant failed to fulfill the requirements of the contract, summary judgment on the seller's breach of contract claim arising under the same contract must be denied. This understanding of § 2-717 is more in line with the Seventh Circuit's reasoning in ECHO and the Illinois Appellate Court's discussion in Rebaque, as well as the majority of other states that have considered the issue.[8]

As such, because an issue of fact remains as to whether defendant suffered damages and whether plaintiff breached the parties' contract for goods, this court cannot grant summary judgment in favor of plaintiff.[9]

III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on Count I is denied.

ENTER:

_____

FREDERICK J. KAPALA
District Judge

Date: January 26, 2011

---

[8] See Kingston, 177 Vt. at 486; Panda Capital, 662 N.Y.S.2d at 586; S. Contracting of Charleston, 862 F. Supp. 107 at 110; Pac. W. Resin Con., 771 F. Supp. at 318; Purofied, 87 F.R.D. at 690.

[9] It should also be noted that it is unclear how granting plaintiff summary judgment at this point in the proceedings would make much difference in the ultimate outcome of this case. Plaintiff does not request a Rule 54(b) finding. Without this finding, the parties would have to proceed to trial on defendant's counterclaims before plaintiff could collect on the judgment. See Quaker Alloy, 686 F. Supp. at 1344 (noting that the seller could not obtain the funds represented by that judgment without moving under Rule 54(b)).